**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

INX INC., a Texas corporation,

       Plaintiff,

vs.                       No. 10-CV-00669 MV/DWS

AZULSTAR, INC., a Michigan corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the court on *Azulstar, Inc.'s Motion to Dismiss for Failure to Join a Party Under Rule 19 of the Federal Rules of Civil Procedure*, filed September 10, 2010 (Doc. No. 13). The Court has reviewed the motions and briefs submitted by the parties, and the relevant authorities. The Court concludes that the motion to dismiss will be denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff INX Inc. ("INX") entered into contract negotiations with AzulStar, Inc. ("AzulStar") whereby AzulStar would be the subcontractor under a contract between INX and the New Mexico Department of Transportation ("NMDOT"). *See* Doc. 6 ¶ 7, at 2. Under the contract, AzulStar would provide equipment and installation services for a high speed wireless internet system on a commuter train system. *See id.* That installation project has been completed. *See id.* ¶ 8, at 2. INX has paid AzulStar all amounts owed under the contract, except for payment of a $23,875 invoice that INX is claiming as an offset. *See id.* ¶ 10, at 2. AzulStar used subcontractors to complete some of its project work but has failed to pay some of those subcontractors, including Vis-Com, Inc. ("Vis-Com"). *See id.* ¶¶ 11-12, at 3. INX has since entered into an agreement with Vis-Com to pay it no more than $146,302.18 for the work it performed on the internet system and,

1

as of the date of the filing of the amended complaint, INX has paid to Vis-Com $65,532.00 of that negotiated amount. *See id.* ¶¶ 13 & 18, at 3. In exchange, Vis-Com assigned to INX its rights against AzulStar for nonpayment. *See id.* ¶ 13, at 3.

AzulStar believed that it would receive a separate contract to provide ongoing maintenance and service for the internet system, but it did not sign such a contract with INX. *See id.* ¶¶ 8-9, at 2. AzulStar has distributed to INX customers and governmental authorities a letter pertaining to the payment dispute, its contracts, and subcontractor payments, that contains "material misrepresentations . . . designed to disparage INX's business reputation, and interfere with its business relationships." *Id.* ¶ 14, at 3. AzulStar has additionally issued press releases, which INX asserts misstate AzulStar's role on the internet system project "and its continued affiliation with INX designed to trade upon INX's goodwill." *Id.* ¶ 15, at 3.

On the same day it filed this motion to dismiss, AzulStar filed with the State of New Mexico, Second Judicial District Court, a Complaint for Breach of Contract against the New Mexico Department of Transportation. *See* Doc. 13, Ex. 1 (Doc. 13-1). In that complaint, AzulStar states that INX was the selected contractor for the internet system project for the commuter train and AzulStar was designated as a major subcontractor for that project. *See id.* ¶¶ 3-4, at 1-2. AzulStar states that there were three service contracts contemplated in the RFP for the project, including a maintenance and warranty contract for the internet system. *See id.* ¶ 7, at 2. AzulStar's understanding from its conversations with INX and NMDOT was that it would be providing all of the services for the project under the RFP, including the additional contracts. *See id.* ¶ 8, at 2. AzulStar asserts in its state-court complaint that NMDOT, INX and it "agreed that NMDOT and AzulStar would directly execute the Spectrum Contract and Internet Connectivity Contract, and that AzulStar and INX would enter into the Maintenance Contract." *See id.* ¶ 11, at 3. No contracts for

2

providing these services were signed by AzulStar. *See id.* ¶¶ 12-32, at 3-6.  AzulStar contends that, on June 7, 2009, it was told that NMDOT's legal department had rejected the agreements that AzulStar and other NMDOT employees had negotiated and that it required that the documents be submitted to INX as the party to whom the contract had been awarded. *See id.* ¶ 14, at 3.

According to its state-court complaint, AzulStar, nevertheless, continued to provide services without a contract based on promises of payment and purchased approximately $125,000 in spare parts in furtherance of those services. *See id.* ¶ 15-18, at 4.  On March 3, 2010, a few days after the project was completed, INX told AzulStar that its services were completed and to turn in all keys to the property. *See id.* ¶ 20, at 4.  Other companies had been chosen to complete the other contracts under the RFP. *See id.* ¶ 22, at 4.  AzulStar contends in its state-court complaint that NMDOT has in its possession equipment and hardware that AzulStar owns. *See id.* ¶ 24, at 5.  AzulStar believes INX was involved in AzulStar not being granted the other contracts or being paid for the additional services. *See id.* ¶¶ 25-32, at 5-6.

As part of its federal suit, INX is seeking a declaration "that there is no contract for ongoing services or maintenance of the commuter train internet system, and thus INX does not owe AzulStar the amounts it claims for breach of such contract."  Doc. 6 ¶ 38, at 7.

AzulStar's motion to dismiss contends that INX's federal lawsuit must be dismissed because NMDOT was not joined as a party to the suit and is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure that is protected from suit in the federal court by the Eleventh Amendment of the United States Constitution. *See* Doc. 13.

## II.    LEGAL STANDARD

Rule 19 of the Federal Rules of Civil Procedure provides for the compulsory joinder, if feasible, of parties necessary for the adjudication of a controversy.[1]  Rule 19 determinations are at the sound discretion of the Court.  *See Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1410-11 (10th Cir. 1996).  In making its determination, the Court will accept all of the pleader's well-pleaded factual allegations as true, and will draw all reasonable inferences in the pleader's favor.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).  The burden of proof lies with the party seeking the dismissal to demonstrate the "indispensable" nature of the absent party.  *See Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The Court decides "whether an absent party's interest in the litigation is sufficient to render it a necessary party under Rule 19(a) based on the pleadings as they appear at the time of the motion." *Cross Timbers Oil Co. v. Rosel Energy, Inc.*, 167 F.R.D. 457, n. 1 (D. Kan. 1996) (citation omitted). In support of their positions, the parties may produce affidavits and other materials regarding the absence of a party under Rule 19.  *See Citizen Band Potawatomi Indian Tribe*, 17 F.3d at 1293.

The analysis of whether an absent party is indispensable occurs in two parts.  First, under Rule 19(a), the court must determine whether the party is "necessary" to the suit and thus must be joined if joinder is feasible.  *See Rishell*, 94 F.3d at 1410.  Second, "[i]f the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is

---

[1]Case law prior to the 2007 amendments to Rule 19 generally describes those parties who should be joined under Rule 19(a) as necessary parties, and those necessary parties whose absence requires that a case be dismissed under Rule 19(b) as indispensable parties, or necessary and indispensable parties.  The 2007 amendments to the rules changed the term necessary parties to required parties.  Much of the case law interpreting Rule 19 predates the amendments and refers to necessary and indispensable parties.  "Necessary" parties and "required" parties have the same meaning for the purposes of this analysis.

4

indispensable." *Id.* If the absent party is indispensable, the suit must be dismissed. *See id.*

>    The necessity of a party is determined by whether
>
>    (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>    (I) as a practical matter impair or impede the person's ability to protect the interest; or
>
>    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1)). In determining whether a party's interests are worthy of consideration under Rule 19, "the underlying merits of the litigation are irrelevant . . . unless the claimed interest is patently frivolous." *Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003) (internal quotation marks omitted). Sometimes, the interests of the absent party may be "so aligned with those of one or more parties that the absent person's interests are, as a practical matter, protected." *Id.* at 1291-92. If the absent party is necessary, the court must then determine whether joinder is feasible. *See* FED. R. CIV. P. 19(a)-(b). If a required party is not already joined, and adding that party is feasible, then "the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2). If joinder is not feasible, the court must decide whether in equity and good conscience the action can continue without the absent person[2]; the Court must determine whether it should dismiss the case or should allow the case to proceed with the existing parties. *See* FED. R. CIV. P. 19(b). Four factors inform the court's indispensability analysis: (I) the non-joined party's interest; (ii) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole liability for a shared

---

[2]*See Davis*, 343 F.3d at 1289.

liability; (iii) the court's and the public's interest in judicial economy; and (iv) the plaintiff's interest in having an outlet in which to present his claims. *See Davis*, 343 F.3d at 1290.

## III.   ANALYSIS

AzulStar contends that the NMDOT is a "required party" under Rule 19 of the Federal Rules of Civil Procedure. *See* Doc. 13 at 3.[3]  It asserts that, under Rule 19(b)(1), it will be severely prejudiced because it will be required "to litigate this matter in two separate courts, effectively doubling its litigation costs, duplicating proceedings, risking inconsistent or conflicting rulings and continual confusion, and preventing AzulStar from being able to obtain complete relief in this Court." *Id.* at 6.  It argues that it will be more difficult for it to defend its claims in different courts. *See* Doc. 18 at 3-4.  Unfortunately for Azulstar, however, more than reasons of judicial economy and convenience are needed to provide grounds for dismissal. *See Rishell*, 94 F.3d at 1413.

AzulStar insists that "there is a substantial risk of duplication of proceedings, conflicting judgments, conflicting interim orders, including even discovery orders, inconsistent obligations and multiple inconsistent findings of fact and conclusions of law." Doc. 13 at 4.  AzulStar states "[i]f not dismissed, this proceeding will always have an empty chair where NMDOT should be." Doc. 18 at 4.  It has not, however, demonstrated how this is true.  A party is a required or necessary party if the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  FED. R. CIV. P. 19(a)(1)(B)(ii).

---

[3]Both parties acknowledge that pursuant to the Eleventh Amendment to the United States Constitution, this Court would most likely not have jurisdiction over NMDOT in this federal proceeding. *See* Doc. 13 at 3; Doc. 17 at 4.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

"Inconsistent obligations" are not, however, the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident - *i.e.*, a risk of inconsistent adjudications or results - does not necessitate joinder of all of the parties into one action pursuant to Fed.R.Civ.P. 19(a).

*Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (citations omitted).

AzulStar argues: "To the extent that AzulStar's breach of contract and declaratory judgment claims against NMDOT will require any allocation of rights, duties or damages between NMDOT and INX, this Court will be unable to effect such an allocation." Doc. 13 at 6. But AzulStar has not made any claims against INX. Instead, AzulStar argues that it "has a number of claims that it needs to assert against INX arising from the same facts including, but not limited to, breach of contract claim. However, in an effort to obviate confusion . . . [it] has not named INX as a party to the State Lawsuit at this time, pending a ruling on this Motion." Doc. 13 at 3. It further states "AzulStar . . . will be required under Rule 13(a) to file a compulsory counterclaim against INX in this lawsuit and accordingly AzulStar will not be able to file claims against INX in the State Lawsuit." *Id.* at 6. AzulStar asserts that its "claims against INX will be identical whether brought in federal court or state court."

The issues in INX's and AzulStar's complaints differ. INX is seeking compliance by AzulStar of the portion of the project that has already been completed, for which AzulStar has been paid and for which AzulStar has not paid its subcontractors.[4] INX's claim does not involve

---

[4]In its Reply, AzulStar states "[d]espite its assertions otherwise, INX also owes AzulStar money that Azulstar earned by virtue of its work on the Project." Doc. 18 at 3.

NMDOT.  In contrast, AzulStar's main complaint involves services it performed and rights to which it believes it is entitled pertaining to potential additional contracts under the RFP.  Despite not including INX as a named defendant in its state-court complaint, AzulStar states "INX, with NMDOT's approval and assistance, interfered with and destroyed AzulStar's contractual rights and interests as to this aspect of the Project."  Doc. 18 at 2.

AzulStar argues that "without NMDOT as a party this Court will be unable to engage in any allocation of rights, liabilities or damages, as appropriate among all of the contracting parties and persons, or to enter a declaratory judgment affecting NMDOT." Doc. 13 at 4.  It asserts that the "disputes inextricably involve NMDOT, as well as AzulStar and INX," and that "the set of transactions and occurrences that form the basis of the allegations of the Amended Complaint intimately involved NMDOT."  *Id.* at 2.   It contends that "if any judgment of this Court would potentially affect equipment, hardware or other matters integral to the Project, whether by lien or attachment or otherwise, NMDOT will not have notice or an opportunity to respond," *id.* at 4, and, that "[t]he absence of NMDOT will prevent this Court from ever having a global outlook in this case including the ability to fashion appropriate remedies to address all of the circumstances arising from the underlying transactions and occurrences."  *Id.* at 6.

Nevertheless, the Court need only decide whether the current parties to the litigation seeking affirmative relief can obtain complete relief without the addition of the absentee party.  *See* Fed. R. Civ. P. 19(a)(1)(A); *Salt Lake Tribune Publ'g Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1097 (10th Cir. 2003).

> Properly interpreted, the Rule is not invoked simply because some absentee [party] may cause future litigation . . . .  The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief.  The "complete relief" clause does not contemplate other potential defendants, nor other possible remedies.

4 MOORE'S FEDERAL PRACTICE § 19.03[2][b], at 19-39 to 19-41 (3d ed. 2010).

  Here, we are only looking at the claims brought by INX because it is the only party asserting a claim for affirmative relief.  AzulStar's potential, but unasserted, counterclaims bear no weight in this analysis.  INX did not assert any claims against NMDOT and can obtain complete relief without NMDOT's involvement in this case.  No additional party need be named in order for INX to obtain the relief it is seeking.

  AzulStar contends that "Rule 19(b)(4) requires the Court to consider, in deciding this motion, whether INX would have any adequate remedy if the action were dismissed for nonjoinder," and that "unlike NMDOT in this lawsuit, INX can be a party to the State Lawsuit, and once the Amended Complaint is dismissed, AzulStar will seek to amend the State Lawsuit to assert its claims against INX."  Doc. 13 at 7.  AzulStar insists that INX will not be prejudiced by the dismissal and would be able to obtain as adequate a remedy as if before this Court.  *Id.*  The plaintiff is generally the master of its complaint, however, and has the right to choose which claims to assert.  *See Hansen v. Harper Excavating, Inc.*, No. 08-4089, ___ F.3d __, 2011 WL 1379821, * 2 (10th Cir. April 13, 2011).  The ability of a plaintiff to redress its claims in another forum does not require the plaintiff to seek redress in that other forum; a plaintiff has the right to the forum of his or her choosing.  *See Rishell*, 94 F.3d at 1412-13.

  AzulStar has not shown how NMDOT is a necessary or indispensable party with regards to INX's claims in its Complaint.[5]  The Motion to Dismiss will be denied.

---

[5]To the extent that INX is seeking a declaration "that there is no contract for ongoing services or maintenance of the commuter train internet system, and thus INX does not owe AzulStar the amounts it claims for breach of such contract,"  Doc. 6 ¶ 38, at 7, AzulStar has not shown why its claims against INX and NMDOT cannot continue separately other than due to inconvenience.

**IT IS THEREFORE ORDERED THAT** *Azulstar, Inc.'s Motion to Dismiss for Failure to Join a Party Under Rule 19 of the Federal Rules of Civil Procedure* (Doc. No. 13)  is DENIED.

Dated this 17th day of June, 2011.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

*Attorneys for Plaintiff*:

Rodney L. Schlagel
Butt, Thornton & Baehr, P.C.
P.O. Box 3170
Albuquerque, NM 87190

Michael Narsete
Law Offices of Michael S. Narsete
5433 Westheimer, Suite 950
Houston, TX 77056

James Kimbell
Jami Meador
Strasberger & Price, LLP
1401 McKinney, Suite 2200
Houston, TX 77010

*Attorneys for Defendant*:

Mickey D. Barnett
David A. Garcia
The Barnett Law Firm, P.A.
1905 Wyoming Blvd. NE
Albuquerque, NM 87112